**DIAMOND HILL INVESTMENT COMPANY and Sage Capital Corporation, Appellants (Defendants),**

**W.A.S., Inc., a Colorado corporation, (Defendant),**

v.

**Thomas A. SHELDEN, d/b/a Atria Architects, Appellee (Plaintiff).**

No. 88–43.

Supreme Court of Wyoming.

Jan. 13, 1989.

Barry G. Williams of Williams, Porter, Day & Neville, P.C., Casper, for appellants.

Todd S. Welch of Bailey, Pickering, Stock & Welch, Cheyenne, for appellee.

Before BROWN, C.J.*, and THOMAS, CARDINE,** URBIGKIT and MACY, JJ.

MACY, Justice.

This is an appeal from a summary judgment in favor of appellee Thomas A. Shelden, d/b/a Atria Architects, authorizing him to foreclose his contractors' lien and declaring that his lien is superior to the mortgage of appellants Diamond Hill Investment Company and Sage Capital Corporation, thereby effectively foreclosing appellants' interest in the subject property. At issue are the determinations by the district court that, pursuant to provisions of the federal Bankruptcy Code, the petition in bankruptcy filed by the owner of the property stayed any action by appellee to foreclose his lien, including the filing of an amended complaint to include appellants as defendants, and that the Wyoming statute of limitations for commencing a foreclosure action was tolled during the pendency of the bankruptcy proceedings.

We affirm.

The parties agree that the issue is:

Did the Trial Court err in finding that the automatic stay provided by 11 U.S.C. § 362 issued in connection with the bankruptcy case filed by W.A.S., Inc. (landowner/developer), Debtor, stayed an action by Appellee against the non-debtor Appellants (mortgage holders) and therefore the First Amended Complaint to Foreclose Lien filed by Appellee to join the Appellants, after the statute of limitations provided by Wyoming Statutes § 29-2-109 had run, was nonetheless timely filed?

We would add, as a related or sub-issue:

If 11 U.S.C. § 362 (1982 & Supp. IV 1986) effectively stayed the filing of the first amended complaint by appellee, did

that section, in conjunction with 11 U.S.C. § 108(c) (1982 & Supp. IV 1986), operate to toll the statute of limitations found in Wyo.Stat. § 29-2-109 (1977) requiring commencement of an action to foreclose a contractors'/materialmen's lien within 180 days after filing the lien statement?

The relevant facts in this case involve its procedural framework, and these facts are not in dispute. Appellee initiated the action by filing a complaint on June 17, 1986, against W.A.S., Inc. (W.A.S.), a Wyoming corporation, George M. Wilson (Wilson), and Thelma Hickman (Hickman) to foreclose a contractors' lien for architectural and engineering services provided pursuant to a contract for the improvement of certain properties owned by the named defendants. Defendants Wilson and Hickman answered, but default was entered against W.A.S. on July 14, 1986. On August 11, 1986, a default judgment and judgment authorizing foreclosure of the lien was entered against W.A.S. Thereafter, on September 8, 1986, W.A.S. filed a motion to stay enforcement of the judgment and a motion for relief from judgment. On that same date, the district court signed an order granting a stay of enforcement pending resolution of the motion for relief from judgment.

All proceedings in the case came to a halt on September 12, 1986, when W.A.S. filed a voluntary petition in the United States Bankruptcy Court for the District of Colorado pursuant to chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 1101-1174 (1982 & Supp. IV 1986). The bankruptcy court dismissed the chapter 11 petition on January 20, 1987. On January 30, 1987, appellee filed a request to amend his complaint to add appellants as defendants pursuant to W.R.C.P. 15. Appellee indicated in this request that, as a result of the preparation of a foreclosure guaranty, he became aware of a mortgage held by appellants against the property owned by W.A.S. An order allowing appellee to file his amended complaint was entered on February 9, 1987,

---

* Chief Justice at the time of oral arguments; retired June 29, 1988.

** Became Chief Justice June 30, 1988.

and the amended complaint was filed on that date. In his amended complaint, appellee alleged that his contractors' lien was prior and superior to the mortgage of appellants, and he requested that the district court so declare and order the mortgage of appellants to be forever barred and terminated. After their motion to dismiss was denied, appellants answered the amended complaint.

On April 9, 1987, the district court entered an order dismissing defendants Wilson and Hickman from the suit pursuant to a stipulation among the parties. Appellee then filed a motion for summary judgment against appellants, and appellants renewed their motion to dismiss. After further denials and renewals of the motions, the district court held a hearing on November 23, 1987, on appellee's motion for summary judgment. An order granting summary judgment to appellee was entered on December 31, 1987. The order provided in pertinent part:

> IT IS HEREBY ORDERED that Summary Judgment be granted in favor of Plaintiff, Thomas A. Shelden, d/b/a Atria Architects, and against the Defendants, Diamond Hill Investment Company and Sage Capital Corporation;

> IT IS FURTHER ORDERED that the Motion to Dismiss and defense of Failure to State a Cause of Action for Which Relief can be Granted of Diamond Hill Investment and Sage Capit[a]l Corporation are hereby denied;

> IT IS FURTHER ORDERED that the lien of Thomas A. Shelden, d/b/a Atria Architects, is superior and prior to the mortgage held by Diamond Hill Investment Company and Sage Capital Corporation;

> IT IS FURTHER ORDERED that the Plaintiff, Thomas A. Shelden, d/b/a Atria Architects, have judgment on his lien in the amount of $93,816.06 and declaratory relief against Diamond Hill Investment Company and Sage Capital Corporation;

> IT IS FURTHER ORDERED that * * * Plaintiff, Thomas A. Shelden, d/b/a Atria Architects, is hereby authorized to foreclos[ ]e his mechanic's lien against the following described property:

> [A specific description of the subject property was inserted here.]

> IT IS FURTHER ORDERED that the property and all improvements thereon above-described be sold at a public sale by the Sheriff of Laramie County or one of his deputies in accordance with the applicable statutes, with the proceeds used to pay the lien and any excess proceeds applied as provided by law.

In appealing from this order, appellants do not challenge the determination by the district court that the lien of appellee was prior and superior to the mortgage of appellants. Appellants limit their appeal, rather, to the question of whether, despite the intervening bankruptcy proceedings involving the owner of the property, the statute of limitations for commencing a foreclosure action on a contractors' lien had run in relation to the claim against appellants, thereby barring appellee from adding appellants as party defendants and foreclosing appellants' interest in the subject property.[1] This is purely a question of law.

---

**1.** The fact that default judgment had been entered against W.A.S. did not prevent appellee from amending his original complaint in this action. Although default judgment had been entered against W.A.S., the suit was not terminated as to any of the parties because of the unresolved claims against defendants Hickman and Wilson. W.R.C.P. 54(b) provides that, when multiple parties are involved, the court may direct the entry of final judgment as to fewer than all of the parties

> only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. *In the absence of such determination and di-*

*rection, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.* (Emphasis added.) A W.R.C.P. 54(b) determination of finality was not made in the default judgment entered against W.A.S., thus the action continued as to all parties. See also 10 C. Wright, A. Miller & M. Kane, *Federal Practice*

Summary judgment is properly granted only upon the dual findings that there is no genuine issue of material fact and that the prevailing party is entitled to judgment as a matter of law. *Farr v. Link,* 746 P.2d 431 (Wyo.1987). Where, as in this case, the facts are not in dispute and the issue involves only a question of law, we accord no special deference to, and are not bound by, the decision of the district court. *Id.* Thus, we must determine whether the district court, in applying the relevant statutes, correctly found that appellee was entitled to judgment as a matter of law.

Wyo.Stat. § 29–1–201(a)(i)(A)(I) (1977) provides that, for purposes of the Wyoming lien statutes, an architect is a contractor. Architects, therefore, are included in the provisions regarding liens of contractors and materialmen. Wyo.Stat. §§ 29–2–101 to –109 (1977). These liens are commonly referred to as mechanics' liens.[2] Appellee properly perfected his lien against the subject property by filing a lien statement with the county clerk in compliance with Wyo.Stat. §§ 29–1–301, 29–2–106, and 29–2–107 (1977). Crucial to the issue in this case is the effect of § 29–2–109, which provides:

> All actions to foreclose or enforce a lien under this chapter shall be commenced within one hundred eighty (180) days after the filing of the lien statement. No lien shall continue to exist except by virtue of the provisions of this chapter for more than one hundred eighty (180) days after the lien is filed unless an action to foreclose the lien is instituted.

Appellee filed his lien statement on April 28, 1986. The 180 days within which he had to commence an action to foreclose or enforce his lien expired on October 27, 1986. W.R.C.P.‐3(a) provides that an action is commenced by the filing of a complaint with the court, and paragraph (b) of that rule further states in relevant part:

> *For purposes of statutes of limitation, an action shall be deemed commenced on the date of filing the complaint as to each defendant,* if service is made on him or on a co-defendant who is a joint contractor or otherwise united in interest with him, within sixty (60) days after the filing of the complaint.

(Emphasis added.) In *Peters v. Dona,* 49 Wyo. 306, 324, 54 P.2d 817, 822–23 (1936) (quoting *Hiller v. Schulte,* 184 Mo.App. 42, 167 S.W. 461, 462 (1913)), we said:

> "And it is well settled that, where parties are thus brought in by an amendment, the suit as to them is begun at the time of such amendment making them parties. The amended petition as to them is the filing of a new suit. And, as an action to enforce a mechanic's lien must be brought within 90 days after the filing of the lien, after the lapse of that time new parties cannot be brought in by amendment and be thus affected by the proceeding."

Quoted in *Seafirst Mortgage Corporation v. Specialty Concrete Construction,* 708 P.2d 1245, 1247 (Wyo.1985).

Appellee timely brought an action to foreclose his lien against the property of defendants W.A.S., Wilson, and Hickman by filing his "COMPLAINT TO FORECLOSE LIEN" against those parties on June 17, 1986. This original complaint, however, did not name appellants as defendants and, in accordance with W.R.C.P. 3(b) and *Seafirst Mortgage Corporation,* it was not effective to commence an action against appellants. The amended complaint joining appellants as defendants was not filed until February 9, 1987, beyond the 180–day statutory limit. In *Seafirst Mortgage Corporation,* we held that the interest of a mortgagee was not affected by a mechanics' lien foreclosure action where the plaintiff failed to join the mortgagee in the suit within the prescribed 180 days. Thus, unless the applicable provisions of the Bankruptcy Code stayed the filing of

---

*and Procedure: Civil 2d* § 2660 at 116–17 (1983).

**2.** The generic term "mechanics' lien" extends to others than mechanics and is sometimes specifi-

cally referred to as a "contractors' lien," a "subcontractors' lien," a "materialman's lien," or a "laborer's lien." 53 Am.Jr.2d, *Mechanics' Liens* § 1 at 513 (1970).

appellee's amended complaint and tolled the running of § 29-2-109, appellee's amended complaint joining appellants as defendants was untimely, and the foreclosure was ineffective as against them.

We turn, therefore, to the Bankruptcy Code to determine the effect of its relevant provisions upon the issue. We must first ascertain whether the automatic stay afforded by 11 U.S.C. § 362(a) (1982 & Supp. IV 1986) stayed the filing of appellee's amended complaint. Section 362(a) provides in pertinent part:

> Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970 (15 U.S.C. 78eee(a)(3)), operates as a stay, applicable to all entities, of—
>
> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
>
> (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;
>
> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
>
> (4) any act to create, perfect, or enforce any lien against property of the estate;
>
> (5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;
>
> (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title[.]

As appellee points out in his brief, both the appellants and the appellee were creditors of the debtor in bankruptcy, W.A.S., each claimed a debt from the debtor in bankruptcy, and each claimed an interest in the same property of the debtor which was part of the bankruptcy estate.[3] In addition to the obvious purpose of the automatic stay to provide debtor protection, it also serves to protect the rights of creditors. This second purpose of the stay was discussed in the case of *In re Paul*, 67 B.R. 342, 345-46 (Bankr.D.Mass.1986), wherein the court stated:

> One of the primary goals of the automatic stay is to sort out creditors into an order of priority untainted by post-petition jockeying for position. Congress has stated that the automatic stay gives protection to both the debtor and the creditors. * * * The intended effect of the stay, therefore, is to fix rights and priorities as of the time of petition filing and *to prohibit any further acts to advance those rights and priorities.*

The stay not only fixes priorities, but also protects them. The Supreme Court in *Isaacs v. Hobbs Tie and Timber Co.*, 282 U.S. 734, 51 S.Ct. 270, 75 L.Ed. 645 (1931), stated that *"valid liens existing at the time of the commencement of a bankruptcy proceeding are preserved...."* *Id.* at 738, 51 S.Ct. at 272. The Second Circuit has held that the effect of filing a petition is a two way street for creditors and debtors: "[I]n general no creditors' liens acquire validity after the filing of the petition ... It should equally follow, we believe, that liens good at this time do not lose their validity...." *Lockhart v. Garden City Bank & Trust Co.*, 116 F.2d 658, 661 (2d Cir.1940). *The freezing of priorities is consistent with the needs of the automatic stay. Just as a creditor's actions after the petition will not affect the priority of other*

---

3. The commencement of a bankruptcy case creates an estate (the bankruptcy estate), which is comprised of, *inter alia,* "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1) (1982).

*creditors' claims, his inaction during the stay should not affect his own priority.* To hold otherwise would encourage the unequal "race of diligence" Congress wanted to avoid.

(Emphasis added.) The § 362(a) stay has been described as being extremely broad in scope, applicable to any type of formal or informal action against the debtor or the property of the bankruptcy estate. 2 W. Collier, *Collier on Bankruptcy* ¶ 362.04 (15th ed. 1988). See also *Baldwin–United Corporation v. Paine Webber Group, Inc.,* 57 B.R. 759 (S.D.Ohio 1985). The filing of a suit to enforce or foreclose a lien violates the automatic stay. *H.T. Bowling, Inc. v. Bain,* 64 B.R. 581 (W.D.Va.1986); *Meek Lumber Yard, Inc. v. Houts,* 23 B.R. 705 (Bankr.W.D.Mo.1982).

It is forcefully urged by appellants, however, that the stay should not apply in this situation. Appellants argue that the action commenced by appellee with his amended complaint was only an action to foreclose the interest owned by the nondebtor appellants in the subject property rather than the commencement or continuation of an action against the debtor, the property of the debtor, or the property of the bankruptcy estate as envisioned by the automatic stay of § 362(a). Although at first blush this argument is attractive, a thorough analysis reveals that it cannot be sustained.

■ It is true that the § 362(a) automatic stay is limited to actions against debtors and does not include actions against nonbankrupt co-defendants. *Hamel v. American Continental Corporation,* 713 P.2d 1152 (Wyo.1986); *Teachers Insurance and Annuity Association of America v. Butler,* 803 F.2d 61 (2d Cir.1986); *Fortier v. Dona Anna Plaza Partners,* 747 F.2d 1324 (10th Cir.1984); 2 W. Collier, *supra.* In arguing that the amended complaint represented the commencement of an action against only nondebtor co-defendants, appellants rely upon our holding in *Hamel* as support for their contention that the stay does not apply under the circumstances of this case. Their reliance on *Hamel,* however, is misplaced.

■ In *Hamel,* the unpaid employees of a contractor brought a mechanics' lien foreclosure action against the property owner 183 days after the filing of the lien statement. The contractor had filed a bankruptcy petition which stayed any action by the employees against the contractor. After discharge of the contractor from bankruptcy, the foreclosure complaint against the owner was filed. In upholding the district court's dismissal of the employees' action, we held that the bankruptcy stay involving the contractor did not stay the employees from filing their foreclosure action against the owner, and therefore the time limit mandated by § 29–2–109 had expired. Critical to our holding in *Hamel,* however, was the fact that the contractor was not, as unsuccessfully argued by the employees in that case, an indispensable party in a lien foreclosure action against the owner. As we pointed out in *Hamel,* under Wyoming law a contractor is not an indispensable party to a lien foreclosure except when the owner insists that he be made a party. *Hamel,* 713 P.2d 1152.

■ The opposite situation is presented in the instant case. Here, the amended complaint sought foreclosure against a competing creditor. As implied in *Hamel,* such action requires that the owner be joined as an indispensable party. The rule is succinctly stated in 53 Am.Jur.2d, *Mechanics' Liens* § 361 at 886 (1970): "The owner of the premises against which a mechanic's lien is sought to be foreclosed is a necessary party, and no foreclosure may be had without joining him." Thus, appellee could not have pursued an independent foreclosure action against appellants. The Supreme Court of Illinois was faced with a similar situation in *Garbe Iron Works, Inc. v. Priester,* 99 Ill.2d 84, 75 Ill.Dec. 428, 457 N.E.2d 422 (1983). Under Illinois law, both the owner and the contractor are necessary parties to a lien foreclosure. The contractor in *Garbe Iron Works, Inc.* filed a bankruptcy petition. The subcontractor, therefore, delayed filing his suit until obtaining a modification of the automatic stay from the bankruptcy court, by which time the limitation period for filing the action had expired—a fact relied upon by the property

owner in seeking dismissal. In affirming a decision for the subcontractor, the Illinois Supreme Court held that, where a necessary party in an action to foreclose a mechanics' lien files a bankruptcy petition, the amount of time in which the subcontractor has to file suit is extended. That court further stated, in language particularly relevant to the instant case:

> Also unpersuasive is defendant's contention that the automatic stay provision in section 362 of the Bankruptcy Act is not applicable to the present facts since no direct relief from [the contractor] was sought. Section 362, however, broadly and plainly prohibits the commencement of any type of proceeding against the debtor (11 U.S.C. sec. 362 (Supp.1979)), and this action, under the statute, could not have been commenced without joining the debtor as a party defendant. Plaintiff was unquestionably subject to the automatic stay and correctly delayed filing suit until it was lifted.

*Id.* 75 Ill.Dec. at 431, 457 N.E.2d at 425.

We conclude, therefore, that, since W.A.S., as owner, was an indispensable party to a foreclosure action against appellants as mortgage holders and since any action against W.A.S. was stayed by § 362(a) of the Bankruptcy Code, appellee correctly determined he was stayed from filing his amended complaint joining appellants as party defendants until after dismissal of the bankruptcy proceedings involving W.A.S. If appellee had filed the amended complaint during the pendency of the bankruptcy proceedings, the action would have been void and of no effect. *Emerson Quiet Kool Corporation v. Marta Group, Inc.,* 33 B.R. 634 (Bankr.E.D.Pa. 1983); 2 W. Collier, *supra* at ¶ 362.11.

■ Having determined that § 362(a) stayed appellee from filing his amended complaint, we must next examine the effect of 11 U.S.C. § 108(c) (1982 & Supp. IV 1986) [4] upon appellee's late filing of the amended complaint. That section provides:

> Except as provided in section 524 of this title, if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor, or against an individual with respect to which such individual is protected under section 1201 or 1301 of this title, and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of—
>
> > (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
> >
> > (2) 30 days after notice of the termination or expiration of the stay under section 362, 922, 1201, or 1301 of this title, as the case may be, with respect to such claim.

In the instant case, the statute clearly operated to extend the time limit found in § 29-2-109 for appellee to file his amended complaint against the debtor, W.A.S., to include appellants as defendants. The extent of the additional time afforded by the statute, however, is less clear. A survey of the cases addressing the question reveals a division in authority as to whether § 108(c) operates to suspend the running of any applicable limitation period, thereby extending the creditor's time to act for a period equal to the time the action was stayed by the Bankruptcy Code, or whether it merely provides an additional thirty days to commence or continue an action once the stay is lifted. See *Garbe Iron Works, Inc.,* 75 Ill.Dec. 428, 457 N.E.2d 422, and *Grotting v. Hudson Shipbuilders, Inc.,* 85 B.R. 568 (W.D.Wash.1988), as cases representing the two divergent views on this question. In this case, however, it is not necessary that we adopt either interpretation. The bankruptcy case involving W.A.S. was dismissed on January 20, 1987, and appellee's amended complaint was filed on February 9, 1987;

---

**4.** Section 108(c) was amended in 1986 to include the references to § 1201 of chapter 12 dealing with bankruptcies of family farmers. The 1986 amendment became effective after commencement of this action and thus was not applicable to this case. Pub.L. 99–554. The 1986 changes, in any event, are immaterial to the issues presented in this case.

thus, it was timely filed under either view of § 108(c).

Our decision in this case is consistent with a basic purpose of the automatic stay provision—that valid liens in existence at the commencement of bankruptcy proceedings be preserved. *Isaacs v. Hobbs Tie & Timber Company*, 282 U.S. 734, 51 S.Ct. 270, 75 L.Ed. 645 (1931); *Bond Enterprises, Inc. v. Western Bank of Farmington*, 54 B.R. 366 (Bankr.D.N.M.1985); *In re Paul*, 67 B.R. 342. The cases involving a conflict between the automatic stay and state law time constraints imposed upon creditors for taking some action (by article 9 of the Uniform Commercial Code or otherwise) have consistently held that the time limitations are tolled during the pendency of the bankruptcy proceeding. See *In re Paul*, 67 B.R. 342 (time for renewal of attachment tolled by filing of bankruptcy petition); *Bond Enterprises, Inc.*, 54 B.R. 366 (period for filing a continuation statement tolled during pendency of bankruptcy proceedings); *Meek Lumber Yard, Inc.*, 23 B.R. 705 (filing of suit to enforce mechanics' lien violates automatic stay, but statute of limitations for filing such suit is tolled); and *H.T. Bowling, Inc.*, 64 B.R. 581 (§ 108(c) tolls any statute of limitations imposed by state law on a claim against a debtor in bankruptcy).

In conclusion, we hold that appellee's amended petition to foreclose his lien was subject to the automatic stay of the Bankruptcy Code, § 362(a), and that, pursuant to § 108(c) of the Code, the statute of limitations for commencing or continuing the action, § 29–2–109, was tolled during the pendency of W.A.S.' bankruptcy proceedings. As a result, we hold that appellee's amended petition was timely filed and that the foreclosure against the interests of appellants was effective.

AFFIRMED.

URBIGKIT, J., files a dissenting opinion in which THOMAS, J., joins.

URBIGKIT, Justice, dissenting, with whom THOMAS, Justice, joins.

This court in present decision misinterprets the relationship of present litigants to a completely disassociated bankruptcy stay for a result which only bails out a litigant from a pleading mistake. To achieve this end, federal bankruptcy law is misconstrued and consequently misapplied; thus, I dissent.

Although not directly raised in present appellate discussion, serious substantive factual questions exist as to the appropriateness and accuracy of the computation of amounts for which Thomas A. Shelden d/b/a Atria Architects (Atria) was given a priority claim and whether the lien claim lacked validity when notice of intent was not provided to "any person with a legal or equitable interest in the property to be changed, * * *." W.S. 29–1–201(a)(v)(A). Consideration of these significant concerns within the summary judgment disposition simply is not pursued in the absence of appellate briefing and counsel review request.[1] *Condict v. Ryan*, 79 Wyo. 211, 333 P.2d 684 (1958), reh'g denied 79 Wyo. 211, 335 P.2d 792 (1959); *Black v. Wills*, 758 S.W.2d 809 (Tex.App.1988).

With the summary judgment disposition, the facts need to be more fully explained. Around April 2, 1985, Atria initiated architectural planning for this Laramie County, Wyoming project involving land apparently sold on contract by George M. Wilson (Wilson) to W.A.S., Inc., (W.A.S.), as real estate developer. Thereafter occurring: (1) a real estate mortgage dated June 14, 1985 and recorded June 20, 1985 was executed by W.A.S. in favor of Diamond Hill Investment Company (Diamond Hill) and Sage Capital Corporation (Sage) as mortgagees; (2) on June 26, 1985, an architectural contract between Atria and W.A.S. was signed; (3) on or about January 28, 1986, the last work was done by the architect; (4) on April 14, 1986, a notice of intent to file lien was served by Atria on W.A.S. but not on Diamond Hill and Sage; (5) on April 28, 1986, a mechanic's lien was filed, but that document lacked itemization as required by

---

1. Present appellant counsel did not handle trial court proceedings.

W.S. 29–1–301(b)(iv) (the record discloses no evidence of compliance with the post-filing notice requirement); (6) on June 17, 1986, suit to foreclose the lien was filed against W.A.S. as the alleged owner of one parcel and against Wilson and Thelma Hickman (Hickman) as alleged owners of another parcel;[2] (7) not included as defendants in the foreclosure action were the holders of the first mortgage on the property; (8) on August 11, 1986, a default judgment was obtained by Atria against W.A.S. which authorized foreclosure against the owner; (9) on September 12, 1986, bankruptcy was filed by W.A.S. in the United States Bankruptcy Court for the District of Colorado; (10) on January 20, 1987, the bankruptcy proceedings were dismissed; (11) on January 30, 1987, a motion for leave to amend the complaint to add the holders of the first mortgage as parties to the litigation was made[3] and then granted on February 9, 1987; (12) an amended foreclosure proceeding and introduction of the new parties and the new issue of what effect the "amended complaint" had; and (13) on April 9, 1987, a stipulation for dismissal of claims with prejudice was entered removing Hickman and Wilson from the litigation. This deleted any architectural firm claim for fees to the Wilson/Hickman property, although no credit was given on the continued claim against W.A.S. property where, in the original complaint,

$8,098.95 of the amount demanded was attributed to the Wilson/Hickman property.

Procedurally, the epoch progressed, and, after cross motions to dismiss and for summary judgment, the summary judgment was granted to Atria and against Diamond Hill and Sage on December 31, 1987, affording Atria a prior lien against the lenders on the property in the amount of $93,816.06. In arriving at its decision, the trial court determined that the lender did not have the required "legal interest" necessary to afford a right to notice,[4] and that the W.A.S. bankruptcy petition by 11 U.S.C. § 362 (1982 ed. & Supp. IV 1986), as the automatic stay, and 11 U.S.C. § 108 (1982 ed. & Supp. IV 1986), providing the thirty-day extended time, validated the lien position of the claimant against the lenders contravening the Wyoming mechanic's lien statute which necessitated institution of litigation within 180 days after the lien notice was filed.

To synthesize this case and provide some reasonable meaning, it is observed that certain aspects are not in controversy. Aspects not in dispute are: (1) under Wyoming statutes, a lien claimant has a superior priority over an earlier real estate mortgage unless the mortgage was filed before work was started on the project, *Sawyer v. Sawyer*, 79 Wyo. 489, 335 P.2d 794 (1959);

---

2. Although the record reflects an installment contract between Hickman as vendor and Wilson as vendee, the relationship of that contract to the parcel "owned" by W.A.S. is not discernible from the record. The description on the mortgage cannot be completely related to the description of the W.A.S. property but clearly does not include the property of Wilson/Hickman.

The judgment granted for the lien was $93,816.06 and the alleged amount due in the complaint for the Wilson/Hickman property was $8,098.95 and for the W.A.S. property, the amount due was $67,263.86. Five thousand dollars was paid on the claim as "representing fifty percent of the initial payment due for stipulation agreement to postpone execution of default judgment dated 11/24/86." The escalation of amounts appeared basically to have encompassed legal fees and interest. Lack of lien amount contest at trial or by appeal, conjecturally, lacking record explanation, may be explainable as an "it doesn't matter" conclusion. With real estate values declining and question

existing of how much Atria's activities increased foreclosure marketability, if any, the lender may face economics that no litigative viability existed to contest the compilation of the claim.

3. This was the first time since the proceedings had started by notice of intent that any action or notice as involving the holders of the first mortgage had been given or pursued. With the default judgment against the owner, which justified foreclosure and dismissal of the bankruptcy petition, a completely new issue was introduced into the then completed litigation for the purpose of determining relative priority.

4. In my opinion, this conclusion was also clearly erroneous within Wyoming mechanic's lien foreclosure criteria but is not presented here for review. See W.S. 29–1–201(a)(v)(A), definition of owner, and W.S. 29–2–107, notice of intention to file lien. See also W.S. 29–1–307, notice of foreclosure to prior perfected lienholders; effect of failure to notify.

W.S. 29–1–305; (2) factually, the litigants did not contest the conclusion that Atria would properly obtain a priority for its lien for the architectural services if the lien was properly filed and the proceedings met the criteria of time limitations in pursuing litigation, see W.S. 29–2–106(a), filing of lien statement within 120 days after last work and W.S. 29–2–109, action commenced within 180 days after the filing;[5] (3) timely filing of the lien was not in question on appeal and, as appellate issues, the parties have not presented the insufficiency of lien intent, impropriety of the missing notice of intent, or neglected post-filing notice of filed lien; and (4) the statutory limitation for institution of an action—the 180 days—equally applies to lien priority determination between interest claimants as it does between the mechanic's lien claimant and the owner. *Seafirst Mortg. Corp. v. Specialty Concrete Const.*, 708 P.2d 1245 (Wyo.1985).

From these attributes now comes this case—whether, if the lien claimant neglectfully omits to include the mortgage holders in the foreclosure action, the statutory time to litigate priority extended when the *owner* filed bankruptcy after a default judgment is entered against him for lien foreclosure even though *that final judgment of foreclosure exists before his bankruptcy is filed.*

Differing from the majority in what is considered to be a somewhat casual evaluation of the factual circumstances, it is perceived that between bankruptcy filing date, September 12, 1986, and before expiration of the mechanic's lien's statute of limitations time of 180 days, around October 24, 1986, the lien claimant could have done any one or a combination of at least four things to assure consideration of his priority claim against the first mortgagees: (1) move to vacate stay as to disassociated third party in order to permit complaint amendment as a process which is summarily granted in normal bankruptcy process; (2) file, in the bankruptcy foreclosure court, for leave to amend in the state court on the basis that the amendment would not be inhibited by the stay since no interest of the debtor was to be affected by the augmented litigation; (3) disregard bankruptcy and file the motion for leave to amend in the state court in contemplation that motion and prospective amendment which did not affect an enjoinable interest of bankruptcy; and/or (4) simplistically file a separate action against the mortgagees to establish mutual priorities as was done in *Seafirst Mortg. Corp.*, 708 P.2d 1245.

Having pursued none of the four procedural opportunities, the time passed for the lien claimant on regular schedule and it lost any priority claim against the prior recorded real estate mortgage. The critical error made by the majority is failure to differentiate the effect within multi-party litigation of bankruptcy of only one litigant. It is not the litigation that is enjoined, it is a proceeding that adversely affects the debtor. The cases are near legion that other aspects of the pending state litigation can continue, when pursued to judgment only against co-makers, guarantors, or for determination of relative priorities between those parties not in bankruptcy, except as subject to explicit injunction of the bankruptcy court as may decisively affect the interest of the bankrupt. 2 W. Collier, Collier on Bankruptcy ¶ 362.02[1] (15th ed. 1988).

It is in non-application of this theory in legal standard that the majority now directly reverses *Hamel v. American Continental Corp.*, 713 P.2d 1152 (Wyo.1986) and supercedes *Seafirst Mortg. Corp.*, 708 P.2d 1245. The extensions of time provided in 11 U.S.C. § 108(c) (1982 ed. & Supp. IV 1986) simply do not apply to the neglect of the claimant to timely pursue his litigation with the lenders to establish relative priority where neither the lien claimant nor the lenders are the debtor in bankruptcy.

---

5. W.S. 29–2–109 provides:
     All actions to foreclose or enforce a lien under this chapter shall be commenced within one hundred eighty (180) days after the filing of the lien statement. No lien shall continue to exist except by virtue of the provisions of this chapter for more than one hundred eighty (180) days after the lien is filed unless an action to foreclose the lien is instituted.

The posture adopted by this court in *Seafirst Mortgage Corporation* is instructive. Factually, the case is procedurally similar with a startling opposite appellate court conclusion. In *Seafirst Mortg. Corp.*, 708 P.2d 1245, lien claimant filed suit to foreclose a lien and obtained a default judgment against the equity owner without giving notice to the mortgagee nor joining it in the legal action. As revealed by the briefs in the case, lien claimant moved to amend its action after default judgment was entered against the owner to add the lender as a litigant. The motion for leave to amend was denied. *Hutnick v. U.S. Fidelity and Guar. Co.*, 47 Cal.3d 456, 253 Cal.Rptr. 236, 763 P.2d 1326 (1988). Lien claimant then filed a declaratory judgment against Seafirst Mortgage Corporation to establish its priority. The trial court held, in overruling the defense of the lender, "that the statute of limitations was not available to appellant, the mortgage interest holder, inasmuch as it was not available to the original defendants." *Seafirst Mortg. Corp.*, 708 P.2d at 1247. This court, in reversing, perceived that "[w]e fail to see the relevancy of the availability or nonavailability of the original defendants" as in fact derived from the circumstance that a default judgment had already been granted so that the owner had no remaining litigable concern. *Id.* at 1247.

Succinctly, this court then held on appeal that "[n]o action was brought within 180 days to foreclose the interest of appellant [mortgagee], and thus the lien cannot affect appellant's interest." *Id.* at 1247. With reversal of the summary judgment in favor of the lien claimant, we dispositively held that the mortgagee would have priority because of the lapsed lien. The declaratory judgment provided an approved contest, but the effort was untimely since the lien had lapsed in accord with the statutory limitation.

The *Seafirst Mortgage Corporation* case and analysis was then followed by this court in *Hamel*, 713 P.2d 1152, where the owner was litigating with tradesmen employees of a subcontractor. The subcontractor filed bankruptcy and the employees claimed their period of limitation to pursue lien claims was extended by the bankruptcy stay order. The question of tolling the requirement of the 180 days for filing the foreclosure action was presented, and this court held that the mandatory time limitation was not tolled.

Philosophically, this court discerned that:

> Since 1901, as in *Wyman v. Quayle*, 9 Wyo. 326, 63 P. 988 (1901), this Court has taken the position there enunciated that a mechanic's lien is a creature of statute, and however equitable the lien claim may be, it does not exist unless the one claiming the lien shows substantial compliance with all the essential requirements of the statute. Lien laws are strictly construed, and their scope cannot be extended. * * * It is essential that there be exact compliance with the time limits fixed by statute, * * * severe as that may seem to be on occasion.

*Hamel*, 713 P.2d at 1153. Specifically presented by appellants in *Hamel* and as specifically rejected by this court in its decision was necessary party contractor status adopted in the case of *Garbe Iron Works, Inc. v. Priester*, 99 Ill.2d 84, 75 Ill.Dec. 428, 457 N.E.2d 422 (1983), which addressed the question of the contractor being an indispensable party so that the stay had some validity in delayed litigation. Since this court specifically rejected the ratio decidendi of *Garbe Iron Works, Inc.*, in *Hamel*, it surely affords weak authority for present decision.

Recognizing the posture of that case that a default judgment had been obtained by the lien claimant against the owner, the wisdom of *Hamel*, 713 P.2d at 1154 appears:

> The automatic stay provisions apply to proceedings or acts against the debtor, the debtor's property, and the property of the estate but do *not* apply to acts against property which is neither the debtor's nor the estate's. *Varisco v. Oroweat Food Company*, 16 B.R. 634 (1981); *Fintel v. State of Oregon*, 10 B.R. 50 (1981); *Administrator of Veterans' Affairs v. Sparkman*, 9 B.R. 359 (1981). The automatic stay does not op-

erate to prohibit action against a co-debtor nor affect the liability of a co-debtor not in bankruptcy. *In re Van Shop, Inc.,* 8 B.R. 73 (1980). *Something more than filing a bankruptcy petition must be shown in order that proceedings be stayed against nonbankrupt parties. Royal Truck & Trailer, Inc. v. Armadora Maritima Salvadorena,* 10 B.R. 488 (1981). Where a pending action is not interfering with a bankruptcy, an automatic stay of such action would in no way foster the Bankruptcy Code's policy of preserving the debtor's insolvent estate for the benefit of creditors. *Holtkamp v. Littlefield,* 669 F.2d 505 (7th Cir.1982). [Emphasis added.]

Rationally, in the present case, where judgment against the owner by the lien claimant has been obtained and the validity of the mortgage is not an issue, the only question remaining is whether the mechanic's lien or the filed mortgage comes first. The question is not if either party, separately, has a present bankruptcy proceeding unhindered right to satisfaction from the asset against which the secured claim is made.

We are led in reference and citation to an array of cases presented by Diamond Hill and Sage or included in comment by the majority, only one of which has any contendable relationship to this presented issue involving the effect of a bankruptcy stay on a priority interest determination between two parties not involved in the bankruptcy. As generally unrelated in concept are: *Isaacs v. Hobbs Tie & Timber Co.,* 282 U.S. 734, 51 S.Ct. 270, 75 L.Ed. 645 (1931), unquestionable principle clearly established that bankruptcy abates foreclosure sale proceedings until disposition or approval of the bankruptcy court is given; *Teachers Ins. and Annuity Ass'n of America v. Butler,* 803 F.2d 61 (2nd Cir. 1986), bankruptcy court cannot entertain and decide traditional common law action; *Lockhart v. Garden City Bank & Trust Co.,* 116 F.2d 658 (2nd Cir.1940), validity date for mortgage was determinable for bankruptcy purposes from the date of filing bankruptcy; *Martin v. Goggin,* 107 Cal.App.2d 688, 238 P.2d 84 (1951), lien claimant lost after obtaining a vacation of stay and permitting the statutory lien time to expire; stay as to bankrupt partnership did not constitute stay as to partners; *Garbe Iron Works, Inc.,* 457 N.E.2d 422, directly contrary to Hamel on the basis that the contractor was a necessary party in subcontractor's action to enforce mechanic's lien; *A. Musto Co., Inc. v. Pioneer Co–Op. Bank,* 7 Mass.App. 926, 389 N.E.2d 1029 (1979), state court injunction against filing petition in bankruptcy with consequent contempt citation which was reversed on appeal; *In re Bennett,* 29 B.R. 380 (Bankr.D.C.Mich.1981), with modification of stay issue between lender and debtor, collateral attack on plan denied; *In re Victoria Grain Co. of Minneapolis,* 45 B.R. 2 (Bankr.Minn.1984), automatic stay did not prohibit filing of mechanic's lien statement to perfect mechanic's lien that had attached to debtor's real property prior to filing of a Chapter 11 petition; foreclosure was subject to injunction from adversary proceedings and time for filing complaint to foreclose *as to debtor* was extended; and *In re Johnson,* 8 B.R. 371 (Bankr.Minn.1981), effect of automatic stay on redemption period, which case has, however, been generally reversed or superceded. See *In re Martinson,* 731 F.2d 543 (8th Cir.1984); *Johnson v. First Nat. Bank of Montevideo, Minn.,* 719 F.2d 270 (8th Cir.1983), cert. denied 465 U.S. 1012, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984); *In re Houts,* 23 B.R. 705 (Bankr.Mo.1982), lien claimant filed motion to vacate stay, and before motion was determined, claimant filed lien which was followed by a suit for enforcement, the court found that filing enforcement action violated stay as a proceeding against the bankrupt; *In re Bond Enterprises, Inc.,* 54 B.R. 366 (Bankr.N.M. 1985), failure to file a continuation statement after bankruptcy did not cause lapse as to administration since critical time for determination of the respective rights of debtor and its creditors is the date of filing the petition in bankruptcy; *United States v. Sayres,* 43 B.R. 437 (Bankr.D.C.N.Y. 1984), filing of federal income tax lien by debtor who had filed for bankruptcy after

the initial tax lien was filed did not violate the automatic stay; *In re Baldwin–United Corp.*, 57 B.R. 759 (Bankr.S.D.Ohio 1985), third-party complaints against Chapter 11 debtor would be enjoined; *In re Marta Group, Inc.*, 33 B.R. 634, 642 (Bankr.Pa. 1983), creditor bankruptcy action seeking injunction barring use or sale of the merchandise without modification of the automatic stay permitting repossession; the court then modified the stay to permit repossession since stay barred repossession of goods in the possession of the debtor so that the bankruptcy court left "to another tribunal the resolution of any competing claims between [creditors]"; and *Grotting v. Hudson Shipbuilders, Inc.*, 85 B.R. 568, 570 (Bankr.W.D.Wash.1988), issue of statute of limitations to file an action for personal injury and whether the automatic stay tolled or whether 11 U.S.C. § 108(c) (1982 ed. & Supp. IV 1986) extended; the court rejected *Garbe Iron Works, Inc.*, 457 N.E.2d 422, and held that the bankruptcy act did not have the effect of tolling the running of statute of limitations "but rather *extends* the statute of limitations until 30 days after the lifting or expiration of the automatic stay" *as to the debtor*. [Emphasis in original.]

Cases cited with somewhat closer relationship but not realistic precedent include *In re Bain*, 64 B.R. 581 (Bankr.W.D.Va. 1986), where contractor completed construction after bankruptcy and then filed a mechanic's lien and followed with a suit to foreclose. Found in contempt by the action to enforce the mechanic's lien, the court found that it did not need to file the action by virtue of the extension of 11 U.S.C. § 108(c) (1982 ed. & Supp. IV 1986) as "imposed by state law on a claim against a debtor who enters bankruptcy as tolled during the bankruptcy proceedings." *In re Bain*, 64 B.R. at 583–84. The district court reversed the bankruptcy court in its award of attorneys' fees. Again, that case has no relevance to our instant case since a judgment against the debtor was here obtained *before* the bankruptcy proceeding was instituted. No action was available or required as a suit *against the debtor* in the present case as was the case in Bain.

Also cited was *Fortier v. Dona Anna Plaza Partners*, 747 F.2d 1324 (10th Cir. 1984), where shopping center buyers brought action against developers/sellers for negligence and breach of contract in connection with parking lot problems. Architect Armstrong filed bankruptcy five days before the trial was to begin in the United States Bankruptcy Court for the District of California. The damage action was removed by plaintiffs to the bankruptcy court for the district of New Mexico where the automatic stay was lifted and the trial was permitted to proceed. The Tenth Circuit first determined that the automatic stay did not deter the litigation as to the co-defendants of the bankrupt. "There is nothing in the statute which purports to extend the stay to causes of action against solvent co-defendants of the debtor." Id. at 1330. Since the debtor was not an appellant, the judgment against him was not an issue and the judgment against co-obligors was generally affirmed on the basis that the automatic stay did not deter proceeding. This decision sidestepped issues raised of the validity generally by virtue of the invalidating decision of the United States Supreme Court in *Northern Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982).

Realistically, of all the citations provided, the one case which provides relevance, although persuasively distinguishable, is *In re Paul*, 67 B.R. 342 (Bankr.D.Mass.1986). The court addresses the expiration of levy attachment lien as occurring during bankruptcy. The court analogizes with decisions considering the creditors' time to file a continuation statement which hold that the extension request is not required during bankruptcy since the time is tolled. Noting the rule of *Isaacs*, 282 U.S. at 738, 51 S.Ct. at 272 that "valid liens existing at the time of the commencement of the bankruptcy proceeding are preserved, * * * " the Massachusetts Bankruptcy Court in *Paul*, 67 B.R. at 345 concluded that, without extension filing, the status was protected and frozen. Acceptance of the principles of the continuation statement cases of

the status freeze should not persuasively include priority determinations between disassociated parties where the claimed interest of the debtor has been subjected to a default judgment. The *Paul* court distinguished between rights of the debtor to redeem and the validity of a creditor to claim in secured status. To the conjectural extent that this one case represents support for the majority opinion, since nominally similar, it alone does not suffice to determine our present dilemma in view of the stated prior attitude and precedent of this court applicable to mechanic's lien claims. I would follow *Seafirst Mortgage Corporation* and *Hamel* and not *In re Paul* in application and persuasion.

> While no specific exception to the automatic stay will be applicable in such circumstances, bankruptcy courts have traditionally granted relief from the stay promptly where the bankruptcy court is unable to provide complete relief and where the debtor is a nominal defendant. The automatic stay will not, however, operate to protect codefendants in litigation where liability is joint and several * * *.

2 W. Collier, Collier on Bankruptcy, supra, at 362–29 to 362–30 (footnote omitted).

It is of the essence of bankruptcy law that 11 U.S.C. § 362 (1982 ed. & Supp. IV 1986) provides the automatic stay which operates against proceedings that adversely affect the assets of the bankruptcy estate or prevent recovery of a claim against the debtor. See 2 W. Collier, Collier on Bankruptcy, supra, at ¶ 362.04[5], addressing "Acts to Create, Perfect or Enforce any Lien Against Property of the Debtor." This general principle is recognized in the decision of the bankruptcy court in *In re Cloud Nine, Ltd.*, 3 B.R. 202 (Bankr.N.M. 1980), when the court observed that the stay applied to efforts of creditors directed against the assets of the bankruptcy estate and did not preclude creditor action against other parties who have not filed proceedings in the court.

> The Court is aware that some of the other parties in the state court proceeding may be attempting to hide behind the relief afforded by the stay. This Order is not to be interpreted as a shield precluding Plaintiffs and other parties from raising any issues they may have against each other which do not affect the Debtor.

Id. at 204. To similar effect, see *Matter of Ricks*, 26 B.R. 134 (Bankr.Idaho 1983); *In re Larmar Estates, Inc.*, 5 B.R. 328 (Bankr.N.Y.1980), in holding that automatic stay provisions did not protect guarantors of loans made to debtors; *In re Fintel*, 10 B.R. 50, 52 (Bankr.Or.1981), the stay does not preclude actions against property which is not part of the bankruptcy estate or to stay action to enforce dischargeable debts against third parties. *"Third party liability is not affected by the bankruptcy."* [Emphasis added]; and *In re Sparkman*, 9 B.R. 359, 362 (Bankr.Pa.1981), "[a]lthough the debtor's other contentions have the sound of validity, his *probata* fell far short of his *allegata"* where the debtor lacked equity after sale and foreclosure; the court held that the stay did not operate to prohibit the act of the sheriff in recording the foreclosure deed. The case determined on the basis that the debtor has no interest in the property after equity is exhausted and foreclosure has been conducted.

A not totally dissimilar circumstance to the present case is found in the bankruptcy court proceedings in *In re C.C.L. Const., Inc.*, 32 B.R. 693 (Bankr.Ill.1983). In simplification of the complex facts, the apparent owner contracted with subcontractor for work and thereafter assigned his interest in the property before filing bankruptcy. The holder of a first mortgage instituted foreclosure and the subcontractor did not answer in the state court foreclosure but filed a proof of claim in bankruptcy. The subcontractor was defaulted in the state court action and attacked in bankruptcy the jurisdiction of the state court where the foreclosure action was conducted. The subcontractor was denied relief by the bankruptcy court on the basis that he should have either or both protected his rights in state court or sought protection from the bankruptcy court through a motion for a restraining order. The relevance

to this case is that under those circumstances, the debtor had no remaining real interest in the property leaving only the two claimants to be viable litigants—the mortgage holder and lien claimant. There was no basis in either bankruptcy stay deterrence or property interest status.

In the present case, when the debtor did default, which established the validity of the mechanic's lien claim, it reserved no further interest to it in how lien claim priorities were to be litigated by others. Money amount and right to foreclose for the lien claimant was then fixed in the property. Allowing the state litigation to proceed by amendment or separate action would not have changed the relative status of the two creditors except to each other and certainly not as adversely affecting any retained interest of the owner. See *Matter of Holtkamp*, 669 F.2d 505, 508 (7th Cir.1982), "where, as here, the pending action is neither connected with nor interfering with the bankruptcy proceeding, the automatic stay in no way fosters Code policy." See also *General Motors Acceptance Corporation v. Yates Motor Company, Inc.*, 159 Ga.App. 215, 283 S.E.2d 74 (1981), where co-obligor, GMAC, failed to answer state court suit after partner filed bankruptcy. The validity of the resulting judgment against GMAC was affirmed on appeal by relation that the proceedings were stayed against the debtor but not extended to include co-defendants.

It is surprising that after this somewhat substantive review of available cases of current vintage, the most logically applicable cases steadfastly remain—*Seafirst Mortgage Corporation* and *Hamel*. These cases, in conjunction with the body of law relating to bankruptcy, reflect that in no regard was action by Atria deterred by bankruptcy. Atria had available, as a separate suit, amendment within the somewhat sterile confines where a default judgment had been entered or, if with question, by first a motion to vacate stay in the bankruptcy court. Lacking any affirmative action as to the opportunities available to the litigant to protect its interests, federal law clearly assures that the Wyoming statute of limitations ended enforcement rights upon the expiration of the 180 days.

The decision of the trial court was wrong as is now the majority in confirming decision which mutates or cremates Hamel and Seafirst Mortgage Corporation. Consequently, I respectfully dissent.