**In re BOND ENTERPRISES, INC.,
d/b/a Durocher's Steak
House, Debtor.**

**BOND ENTERPRISES, INC., d/b/a
Durocher's Steak House, Plaintiff,**

v.

**WESTERN BANK OF
FARMINGTON, Defendant.**

**Bankruptcy No. 11–83–01314 MA.
Adv. No. 84–0327 M.**

United States Bankruptcy Court,
D. New Mexico.

Oct. 16, 1985.

Louis Puccini, Jr., Albuquerque, N.M., for plaintiff.

John F. Caffrey, Albuquerque, N.M., for defendant.

## MEMORANDUM OPINION

MARK B. McFEELEY, Bankruptcy Judge.

This matter came before the Court on March 26, 1985, in a trial on stipulated facts. Defendant is Western Bank of Farmington, formerly known as The Farmington National Bank. Plaintiff is Bond Enterprises, Inc., a partnership which owned and operated Durocher's Steak House in Farmington. Durocher's has been subsequently owned and operated by a series of owner/operators.

The facts are as follows. Since December, 1976, plaintiff and defendant have been involved in a series of loan transactions. The first loan was executed by the parties on December 29, 1976. In July, 1977, a second loan in the amount of $400,-000.00 was executed by and between defendant and plaintiff. On June 21, 1979, defendant granted a third loan to plaintiff in the amount of $300,000.00. At this time, the parties entered into a security agreement collateralizing the loan with a security interest in assets of Durocher's, including a security interest in New Mexico Dispenser's license number 1569 ("license"). The security interest was perfected on July 16, 1979, when a financing statement, claiming the license as collateral, was filed of record with the San Juan County Clerk and the New Mexico Secretary of State.

On October 28, 1981, plaintiff and defendant entered into a new loan agreement consolidating all prior notes and obligations. On the same date, two new security agreements were executed. The first security agreement granted defendant a

security interest in furniture, fixtures, inventory, accounts receivable, food and liquor. A financing statement reflecting this security interest was filed of record with the San Juan County Clerk on January 15, 1982. Neither the security agreement nor the financing statement claimed a security interest in New Mexico Dispenser's license number 1569. The second security agreement granted defendant a security interest in New Mexico Dispenser's license number 1569. A financing statement reflecting this security interest was filed of record with the New Mexico Secretary of State on January 15, 1982. No financing statement was filed with the San Juan County Clerk. At no time did defendant file a termination statement terminating the financing statement of June 21, 1979.

On November 21, 1983, plaintiff filed a Chapter 11 petition under Title 11 U.S.C. in the United States Bankruptcy Court for the District of New Mexico and has since remained as debtor-in-possession. Subsequently, Durocher's Steak House and New Mexico Dispenser's license number 1569 were transferred to a buyer, pursuant to Orders of this Court. The Court Order stipulated that $70,000.00 would be assigned as the reasonable value of this liquor license.

Plaintiff argues that defendant has no properly perfected security interest in New Mexico Dispenser's license number 1569 under the June 21, 1979, security agreement or the October 28, 1981, security agreement. Regarding the security interest in the license taken under the 1979 agreement, plaintiff contends that the security interest was extinguished at the time the 1981 loan was used to pay and discharge all prior debts, including the debt owed under the 1979 loan, and that even if the security interest in the license was not extinguished, the security interest lapsed on June 21, 1984, because of defendant's failure to file a continuation statement pursuant to N.M.Stat.Ann. § 55-9-403 (1978). Regarding the security interest in the license taken under the 1981 agreement, plaintiff contends that the security interest

was never perfected because of defendant's failure to file a financing statement with the San Juan County Clerk pursuant to N.M.Stat.Ann. § 55-9-401.

Defendant, on the other hand, argues that defendant's filing of a continuation statement would have constituted a violation of the automatic stay under 11 U.S.C. § 362 and that, even if not a violation of the stay, the filing of a bankruptcy petition fixes a secured creditor's rights making it unnecessary to file a continuation statement. Defendant further contends that the validity of the June 1979 financing statement claiming a security interest in the license continued beyond the execution of the October, 1981 financing statements because defendant never filed a termination statement terminating the 1979 security interest and because the "future advances" provision of the 1979 agreement operated to secure the 1981 loan.

The first issue presented for determination is whether the filing of a continuation statement after the filing of a petition in bankruptcy constitutes a violation of the automatic stay provisions of 11 U.S.C. § 362. Section 362 of the Bankruptcy Code, 11 U.S.C. § 362 (1983), provides that the filing of a petition in bankruptcy "operates as a stay, applicable to all entities, of — ... (4) any act to create, perfect, or enforce any lien against property of the estate ...." 11 U.S.C. § 362(a)(4). Section 362 further establishes that the stay continues until the case is closed, dismissed or discharged. 11 U.S.C. § 362(c). Unless relief of the stay is granted by the court pursuant to 11 U.S.C. § 362(d), which provides that a party in interest may seek relief from a stay on particular grounds, the automatic stay of § 362(a)(4) is absolute, and any action to the contrary constitutes a violation of the stay. *See Matter of Associated Real Estate Technicians, Inc.,* 32 B.R. 306 (Bankr.S.D.Ohio 1983); *In re Munsey Corporation,* 10 B.R. 864 (Bankr. E.D.Pa.1981).

In the instant case, plaintiff argues that defendant's failure to file a continua-

tion statement caused its perfected security interest in the license to lapse. However, the filing of a continuation statement, which operates to continue the effectiveness of a perfected security interest, is clearly an act to perfect a lien against property of a debtor within the meaning of § 362(a)(4). Thus, defendant's filing of a continuation statement would have been a violation of the stay imposed by plaintiff's filing of its petition in bankruptcy.

As the filing of a continuation statement during the pendency of bankruptcy proceedings is a violation of an automatic stay, absent the granting of relief from the stay by the Court, the next issue for determination is whether, pursuant to N.M.Stat.Ann. § 55–9–403, a perfected security interest, valid at the time bankruptcy proceedings are initiated but due to expire during the pendency of the bankruptcy proceedings, remains perfected until termination of the proceedings or lapses in the absence of the filing of a continuation statement.

New Mexico has adopted the 1962 version of the Uniform Commercial Code which provides that a financing statement is effective for five years from the date of filing unless a continuation statement is filed before the expiration of that period. N.M.Stat.Ann. § 55–9–403(2). If no continuation statement is filed the effectiveness of the security interest lapses and becomes unperfected. *Id.* The 1972 version of the Uniform Commercial Code recognizes that financing statements might expire during bankruptcy proceedings and allows for that contingency, providing that during the pendency of bankruptcy proceedings a perfected security interest will not lapse but will remain effective. However, the version of the Code adopted in New Mexico does not specifically provide for the effect of an intervening bankruptcy on the lapse of a security interest.

A number of courts have considered the issue of the lapsing of a security interest during the pendency of bankruptcy proceedings in the context of state statutes adopting the 1962 version of § 9–403 of the Uniform Commercial Code. The majority of these courts have concluded that it is unnecessary for a creditor to file a continuation statement after the filing of a petition in bankruptcy and have held that "during an intervening bankruptcy the effectiveness of a properly filed financing statement does not lapse on the expiration of the original financing statement." *In re Chaseley's Foods, Inc.,* 30 B.R. 452, 455 (N.D.Ind.), *aff'd.,* 726 F.2d 303 (7th Cir. 1983); *In re Delia Brothers, Inc.,* 29 U.C. C.Rep. 1446 (S.D.NY1980); *Matter of Funding System Asset Management Corp.,* 38 B.R. 351 (Bankr.W.D.Pa.1984); *In re Steigerwald,* 35 B.R. 254 (Bankr.E.D.Pa.1983). This court agrees with the majority position for several reasons.

First, the critical time for determining the respective rights of a debtor and its creditors is the date of the filing of a petition in bankruptcy. *Lockhart v. Garden City Bank & Trust Co.,* 116 F.2d 658 (2d. Cir.1940); *see also Delia Brothers,* 29 U.C.C.Rep. at 1448. In *Isaacs v. Hobbs Tie & Timber Co.,* 282 U.S. 734, 738, 51 S.Ct. 270, 272, 75 L.Ed. 645, 667 (1930), the Supreme Court concluded that "valid liens existing at the time of the commencement of a bankruptcy proceeding are preserved." In the instant case, to permit the lapsing of defendant's security interest in the license, because of its failure to file a continuation statement following the expiration date of the security interest during the pendency of bankruptcy proceedings would be inconsistent with these principles.

Second, the purpose of the filing requirements under § 9–403 of the Uniform Commercial Code is to provide adequate notice of a creditor's interest in property to other parties. *Chaseley's Foods,* 30 B.R. at 455; *see also Delia Brothers,* 29 U.C.C.Rep. 1446. The Court in *Chaseley's Foods* noted that

the "notice" purpose of the continuation statement requirement is not served once a bankruptcy petition is filed. The only parties which can possibly be injured by failure to file a continuation statement once a bankruptcy proceeding is pending are creditors who obtain their liens after

the financing statement expires. However, because the trustee takes possession of the debtor's property once a petition is filed, and this possession is open and notorious, these creditors should not need the protection of a continuation statement. *In re Delia Brothers, Inc.*, 29 U.C.C.Rep. 1446, 1449 (Bankr.S.D. NY1980); *In re South County Motel Corp.*, 19 U.C.C.Rep. 1254, 1258 (Bankr. D.R.I.1976).

*Chaseley's Foods*, 30 B.R. at 455. "[R]efiling ... could have no more than a ceremonial effect." *In re South County Motel Corp.*, 19 U.C.C.Rep. 1254, 1257 (D.R.I. 1976). In the instant case, plaintiff does not need the protection of a continuation statement as it had notice of the security interest held by defendant.

Third, the change in the 1972 version of § 9–403 of the Uniform Commercial Code from the 1962 version was not intended to reflect a change in the law. Rather, the change in § 9–403 was merely an attempt to clarify the rule.

> Subsection (2) [of the 1972 version] also recognizes that financing statements might expire during an insolvency proceeding. While the prevailing line of decisions is to the effect that the situation is frozen at the moment of bankruptcy without an obligation to refile, there are contrary decisions, and this situation might prove an inadvertant trap to a secured party who failed to refile or file a continuation statement during a bankruptcy. The change continues the validity of the financing statement until the end of the insolvency proceedings....

1972 Revision of U.C.C. Article 9, § 9–403 (*See* Comments on Reasons for 1972 Change.) *See also Delia Brothers*, 29 U.C.C.Rep. at 1449 ("A bankruptcy proceeding eliminated the need for further refiling; both before and after the amendment of § 9–403(2).")

■ This Court holds that a creditor's security interest, perfected and valid at the initiation of bankruptcy proceedings but due to expire during the pendency of those proceedings, does not lapse where the cred-itor fails to file a continuation statement. Rather, the creditor's rights in the security interest are preserved until the later of either (1) the end of the time period fixed by N.M.Stat.Ann. § 55–9–403 for the lapsing of a financing statement, or (2) thirty days after notice of the expiration or termination of the stay under 11 U.S.C. § 362. 11 U.S.C. § 108(c); *see Matter of Design Builders, Inc.*, 18 B.R. 392 (Bankr.Idaho 1981). Of course, if the creditor expects that the security interest may continue in existence following termination of the bankruptcy proceedings or the automatic stay, the creditor's best course of action is to request the Court lift the automatic stay, pursuant to 11 U.S.C. § 362(d), so that it may file a continuation statement.

In the instant case, then, if defendant's security interest in New Mexico Dispenser's license number 1569 was perfected and valid at the time plaintiff filed its petition in bankruptcy, defendant's interest in the license remains effective notwithstanding its failure to file a continuation statement. The Court must now determine the status of defendant's interest in the license as of November 21, 1983, the date plaintiff filed its petition in bankruptcy.

Pursuant to N.M.Stat.Ann. § 55–9–403(2), a financing statement not providing a maturity date is effective "for a period of five years from the date of filing." A security interest may lapse before the end of the five year period only if (1) a termination statement is filed terminating the security interest, pursuant to N.M.Stat. Ann. § 55–9–404, or (2) the debtor makes full payment on the underlying note, *Safe Deposit Bank and Trust Company v. Berman*, 393 F.2d 401 (1st Cir.1968).

In the instant case, defendant had a security interest in New Mexico Dispenser's license number 1569 under the 1979 security agreement between plaintiff and defendant. It was properly perfected by its filings with the San Juan County Clerk. The security interest was due to expire on was June 21, 1984. The balance of the debt owed on the 1979 security agreement creating this interest was paid off with monies

from the 1981 loan. However, no termination statement was filed terminating the defendant's security interest in the license. Further, plaintiff never made a written demand on defendant to send a statement indicating that it no longer claimed a security interest in the license. Thus, the question becomes whether the payment of the 1979 loan monies from the 1981 loan constitutes such a discharge of the 1979 debt as to extinguish the 1979 security interest in the license.

While it has been held that a security interest lapses, or is extinguished, upon payment of the underlying note, *Safe Deposit Bank*, 393 F.2d 401, this is not the case where the security agreement secures future advances as well as the advance specifically addressed by the agreement. Section 55–9–204(5) provides that "[o]bligations covered by a security agreement may include future advances or other value whether or not the advances or value are given pursuant to commitment." Official Comment 8 under this section indicates that collateral may be used to secure future as well as present advances as long as the security agreement so provides. It further notes that the security agreement need not be specific as to the amount of the future advances for the security interest to be valid. These principles are supported by ample case law. *See, e.g., In re Nutting*, 44 B.R. 233 (Bankr.Vt.1984); *In re McQueen, 27 B.R. 717 (Bankr.Vt.1983)*.

In the instant case, the original security agreement of June 21, 1979, provides that the security interest granted to defendant secures not only the payment of the promissory note of June 21, 1979, but also *such additional sums as may hereafter be advanced* to the [plaintiff] ... for any purpose whatsoever and evidenced by notes ... and this security agreement *shall secure the payment of any and all extensions or renewals* and successive extensions or renewals of said note or notes, and of any indebtedness at any time owing to [defendant] ... and shall further secure the payment of any and all indebtedness owing by [plaintiff] to [defendant], and *for all of which this*

*security agreement shall stand as a continuing security until paid....* June 21, 1979, Security agreement, page 1 (emphasis added).

Pursuant to § 55–9–404, the language of the security agreement of June 21, 1979, indicates that it was the intent of the parties to the agreement that the security interest would secure not only the amount owing under the 1979 loan but such other advances as would be made in the future. In any event, the character of the 1981 loan repaying all preceding debts of plaintiff's business operated merely to restructure those debts by consolidating them into one new loan. This consolidation was, in effect, a "renewal" of the previous loans, including the 1979 loan, and was covered by the provision in the security agreement, *supra*, providing that the agreement would secure "the payment of all extensions or renewals". Therefore, it is the conclusion of this Court that defendant had a properly perfected security interest in the license at the time plaintiff filed its petition in bankruptcy on November 21, 1983.

Accordingly, this Court finds that defendant has a properly perfected security interest in New Mexico Dispenser's license number 1569 and should be awarded the rights to the proceeds from the sale of that license.

An appropriate order shall enter.