In re William Matthew **ROTH**, Social Security No. 504–32–6136, and Bernice Marina Roth, Social Security No. 503–44–7549, **Debtors.**

**FARM CREDIT SERVICES, Plaintiff,**

v.

**William Matthew ROTH and Bernice Marina Roth, Defendants.**

**Bankruptcy No. 93–40460.**
**Adv. No. 94–4006.**

United States Bankruptcy Court,
D. South Dakota,
Southern Division.

Aug. 4, 1994.

Douglas R. Kettering, Kabeiseman, Hosmer & Kettering, Yankton, SD, for plaintiff.

John Harmelink, Harmelink & Fox Law Office, Yankton, SD, for defendants/debtors.

### MEMORANDUM DECISION

PEDER K. ECKER, Bankruptcy Judge.

■ The matter before the Court is a Complaint to Determine the Validity, Priority and Extent of Lien filed by Yankton, South Dakota, Attorney Douglas R. Kettering on behalf of Plaintiff Farm Credit Services [hereinafter "FCS"] and answered by Yankton, South Dakota, Attorney John Harmelink on behalf of Defendant Debtors [hereinafter "Debtors"]. The underlying issue is whether the automatic stay tolls the time permitted under South Dakota law for filing an addendum to a collateral real estate mortgage[1] in order to continue the mortgagee's existing mortgage lien. This Memorandum Decision shall constitute Findings of Fact and Conclusions of Law as required by Federal Rule of Bankruptcy Procedure 7052. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(1).

### I.

On January 9, 1985, Debtors filed a voluntary Chapter 11 bankruptcy petition. A plan of reorganization was confirmed February 12, 1986, and an order of discharge entered the same date. The confirmed plan incorporated a stipulated settlement agreement

---

1. A collateral real estate mortgage enables a lender to file one mortgage with a stated face amount while the actual debt owed during the term of the mortgage may fluctuate based on the credit needs of the borrower. *Gust v. Peoples and Enderlin State Bank,* 447 N.W.2d 914, 917 (N.D.1989); *see also* S.D.C.L. § 44–8–26.

wherein Debtors agreed to amortize the claim of Mitchell–Huron Production Credit Association over a 240–month period and pay a balloon payment, consisting of the remaining balance, principal, and interest, after 84 months (seven years). Due to unforeseeable changes in circumstances, Debtors were unable to pay the remaining balance of approximately $571,798 when it became due, and on July 27, 1993, Debtors filed a Chapter 12 bankruptcy petition.[2]

As successor in interest to Mitchell–Huron Production Credit Association, FCS filed a $557,034.95 proof of claim in this Chapter 12 proceeding. Debtors objected to the proof of claim, stating that a collateral real estate mortgage they executed is now void. This adversary action was filed to determine the secured status of FCS as it relates to Debtors' chattels and real estate. In its complaint, FCS alleges it is secured in Debtors' chattels and real estate by virtue of notes, mortgages, and security agreements and a collateral real estate mortgage which is still perfected, since an addendum, required by state law, was timely filed "in light of the 362 Stay in effect during the Debtors Chapter 11 Bankruptcy file." Debtors answered the complaint, contending FCS does not have any security interest or mortgage lien interest in Debtors' personal or real property.

The Court issued a scheduling order to permit written argument and authorities, wherein the parties debate: a) the effect and timeliness of filed Uniform Commercial Code [hereinafter "U.C.C."] financing statements; b) the timeliness of the addendum filed to the collateral real estate mortgage; and c) the effect of the stipulation incorporated into Debtors' Chapter 11 bankruptcy plan.

## II.

### A.  U.C.C. Financing Statements

Before, during, and after Debtors' Chapter 11 bankruptcy proceeding, Mitchell–Huron Production Credit Association and/or its successors, including FCS, filed several financing statements and continuation statements covering Debtors' farm machinery, livestock, and crops. One of the key financing statements, # 19248, was filed December 3, 1979, to perfect a security interest in Debtors' equipment, livestock, feed, grain, and general farm products. Debtors argue the effectiveness of this pre-petition filing has since expired, along with the security interest it perfected. Believing financing statement # 19248 was "last continued" August 21, 1984, Debtors calculate its expiration date as follows:

> The security interest claimed by FCS pursuant to financing statement # 19248 expired five (5) years and sixty (60) days after December 3, 1979, or sixty (60) days following confirmation of debtors' Chapter 11 Plan on February 12, 1986. Pursuant to SDCL 57A–9–403(2), the security interest in Roths' chattel property expired on or about April 14, 1986.

In South Dakota, a financing statement is effective five years plus sixty days. S.D.C.L. § 57A–9–403(2).[3] The effectiveness will lapse on that expiration date unless a continuation statement is filed prior to the lapse. *Id.* If an appropriate continuation statement is filed, "the effectiveness of the original statement is continued for five years after the last date to which the filing was effective whereupon it lapses ... unless another continuation statement is filed prior to such lapse." S.D.C.L. § 57A–9–403(3). Each new five-year period under a continuation statement begins from the expiration of the preceding period, and there is no limit to the number of continuation statements that may be filed. Reiley, *Guidebook to Security Interests in Personal Property* § 3.07[3], at 3–27 (2d ed., 1992). When a security interest, perfected by filing, exists at the time insolvency proceedings are commenced, "the security interest remains perfected until termination of the insolvency proceedings and

---

**2.** The validity of this second filing was challenged with a motion to dismiss based on lack of good faith. The Court concluded Debtors demonstrated a genuine need for additional relief due to bona fide changes in circumstances, including poor health and thwarted efforts to renegotiate

an extension of the balloon payment. *In re Roth,* 167 B.R. 911 (Bankr.D.S.D.1994).

**3.** South Dakota has adopted the Uniform Commercial Code at Title 57A. Secured transactions are addressed in Chapter 57A–9.

thereafter for a period of sixty days or until expiration of the five year and sixty-day period, whichever occurs later." S.D.C.L. § 57A–9–403(2).[4]

■ Based on a December 3, 1979, filing date, financing statement # 19248 was effective through February 1, 1985. A continuation statement was filed August 21, 1984, to extend the expiration of the preceding period another five years, or until February 1, 1990. Because a security interest, perfected by filing, existed when Debtors filed their January 9, 1985, Chapter 11 bankruptcy petition, the security interest remained perfected until the later of these two dates:

- the termination of Debtors' Chapter 11 bankruptcy proceeding on February 12, 1986, plus sixty days, which was April 13, 1986; or

- the expiration of the five year and sixty-day period, which was February 1, 1990.

Without a second continuation filing prior to February 1, 1990, the security interest would have lapsed, however, on December 22, 1989, FCS did, in fact, file a second continuation statement to extend the effective period another five years, or until February 1, 1995. Financing statement # 19248 is still valid, and the related security interest still perfected.[5]

### B. Addendum to Collateral Real Estate Mortgage

■ On December 2, 1980, Debtors gave Production Credit Association of the Midlands [hereinafter "PCAM"] a standard form real estate mortgage and a Collateral Real Estate Mortgage pursuant to S.D.C.L. § 44–8–26.[6] On February 16, 1984, Debtors gave

---

**4.** The "Official Statement of Reasons for 1972 Changes in Official Text" explains an important addition to U.C.C. § 9–403:

> Subsection (2) also recognizes that financing statements might expire during an insolvency proceeding. While the prevailing line of decisions is to the effect that the situation is frozen at the moment of bankruptcy without an obligation to refile, there are contrary decisions, and this situation might prove an inadvertent trap to a secured party who failed to refile or file a continuation statement during a bankruptcy. The change [from the 1962 version] continues the validity of the financing statement until the end of the insolvency proceedings and for 60 days thereafter, or until the expiration of the five-year period, whichever is later.

> See *Uniform Commercial Code Reporting Service* ¶ 9403, at 188 (1991). *See also Matter of Chaseley's Foods, Inc.*, 726 F.2d 303, 309 (7th Cir. 1983).

**5.** Debtors raise two additional concerns in connection with the subject of financing statements, both, however, fail to change the "effective" status of financing statement # 19248.

> First, Debtors state that neither Production Credit Association of the Midlands [hereinafter "PCAM"] nor FCS complied with the "requirement" contained in S.D.C.L. § 57A–9–405 that a financing statement disclose an assignment of interest. Actually, the first continuation statement of August 21, 1984, *did* disclose Production Credit Association of the Midlands as the successor in interest to Mitchell–Huron Production Credit Association. In any event, S.D.C.L. § 57A–9–405 plainly states a financing statement "may" disclose an assignment of a security inter-

est. There is no mandatory requirement to do so.

> Second, Debtors recite the fact PCAM filed several other financing statements during the pendency of the Chapter 11 bankruptcy without ever seeking or obtaining relief from the automatic stay. That point seems to be made to show a contradiction in the position taken by FCS in this adversary matter in that FCS claims it was "precluded" or stayed from filing an addendum to its collateral real estate mortgage due to the automatic stay. The following U.C.C. activity is identified:
> 7/31/85: PCAM filed financing statement # 276239 to perfect a security interest in 1985 crops.
> 8/01/85: PCAM filed financing statement # 34886 to perfect a security interest in chattel property.
> 8/05/85: PCAM filed financing statement # 23885 to perfect a security interest in crops.
> 8/10/85: PCAM filed a continuation statement to continue a perfected security interest in 1985 crops.
> 5/24/90: FCS filed a continuation statement to continue a security interest in chattel property.

**6.** Section 44–8–26 provides:

> A mortgage made pursuant to this section shall, notwithstanding the fact that from time to time during the term thereof no indebtedness shall be due from the mortgagor to the mortgagee, constitute a continuing lien against the real property covered thereby for the amount stated in the mortgage.... Collateral real estate mortgages may be used to secure commercial, agricultural or consumer loans or lines of credit including, but not limited to, revolving notes and credits and over-draft checking plans.

PCAM an "Additional Collateral Real Estate Mortgage" to secure a demand payment of $160,000. South Dakota's collateral real estate mortgage provision provides:

> When payable on demand, collateral real estate mortgages are effective for five years and sixty days from the date of filing. The security interest of the mortgagee can be extended only by filing an addendum ... before five years and sixty days expire. If an addendum is not timely filed, the lien created by the collateral real estate mortgage shall lapse.

S.D.C.L. § 44–8–26. Based on a February 16, 1984, filing date, this additional collateral real estate mortgage was effective through April 18, 1989, yet FCS did not file its Addendum to Mortgage/Collateral Real Estate Mortgage until January 17, 1990. The question now raised is whether Debtors' intervening Chapter 11 bankruptcy proceeding, which existed from January 9, 1985, until February 12, 1986, extended the time in which to file the addendum an additional thirteen months.

Debtors conclude tolling is not apropos. First, PCAM had ample time to comply with S.D.C.L. § 44–8–26—it could have filed the addendum any time between the February 12, 1986, discharge and the April 18, 1989, expiration date. Second, there is no justification for tolling, since the collateral real estate mortgage did not lapse during the bankruptcy; in fact, the filing was still in effect for more than three years *after* bankruptcy discharge was granted. Third, no case law supports FCS's argument—it ap-

pears PCAM simply forgot or neglected to timely file the addendum; therefore, FCS's liens upon the real estate and chattel property lapsed by operation of law. Finally, since an untimely addendum does not resurrect expired liens, the Court should declare the liens void.

FCS argues tolling is pertinent because 11 U.S.C. § 362(a) prevents "any act to create, perfect, or enforce any lien," and filing an addendum is tantamount to an act of perfection. Based on this contention, Debtors' Chapter 11 proceeding would have added thirteen months to the effective period of the collateral real estate mortgage, making it valid until May 17, 1990, meaning the January 17, 1990, addendum was timely filed. Further, FCS believes tolling is a necessary remedy to an existing problem:

> [A] mortgagee under a collateral real estate mortgage does not receive the same protection during and immediately after insolvency proceedings as that afforded a U.C.C. secured party through SDCL A–9–403 [sic].
>
> . . . .
>
Without the protection of SDCL A–9–403 [sic], mortgagees under a collateral real estate mortgage find themselves in the same predicament that U.C.C. secured parties were in before the enactment of the 1972 Revision, as discussed above. Unless it is determined that the automatic stay provisions of 11 U.S.C. 362 toll the running of the effective time period for collateral

---

A filed collateral real estate mortgage which states a maturity date on the instrument secured thereby of five years or less is effective until such maturity date and thereafter for a period of sixty days. Any other filed collateral real estate mortgage is effective for a period of five years from the date of filing and thereafter for a period of sixty days. A filed collateral real estate mortgage which states that the instrument secured thereby is payable on demand is effective for five years from the date of filing and thereafter for a period of sixty days. The effectiveness of a filed collateral real estate mortgage lapses upon the expiration of the sixty-day period unless an addendum to the collateral real estate mortgage extending its effective date is filed prior to the lapse. Upon such lapse, the lien created by the collateral real estate mortgage shall terminate. An addendum continuing the effectiveness of the lien

of the collateral real estate mortgage may be filed by the mortgagee:

(1) Within six months before and sixty days after a stated maturity date of five years or less; and

(2) Otherwise within six months before and sixty days after the expiration of the five year effective date period.

.... Upon the timely filing of such an addendum to a collateral real estate mortgage, the effectiveness of the collateral real estate mortgage will be continued for five years after the stated maturity date in those instances where the original collateral real estate mortgage provided a maturity date or for five years after the expiration of the five-year period whereupon it shall lapse in the same manner as provided above unless another addendum to the collateral real estate mortgage continuing the effectiveness of its lien is filed prior to such lapse.

real estate mortgages, the mortgagees will be faced with situations where their lien will lapse during insolvency proceedings.

Urging a similar result, FCS cites various Article 9 cases decided before the 1972 U.C.C. revisions,[7] including *In re Chaseley's Foods, Inc.*, 30 B.R. 452 (N.D.Ind.1983); *In re Paul*, 67 B.R. 342 (Bankr.D.Mass.1986); *In re Bond Enterprises, Inc.*, 54 B.R. 366 (Bankr.D.N.M.1985); and *In Matter of Funding System Asset Management Corp.*, 38 B.R. 351 (Bankr.W.D.Pa.1984), which generally found that the filing of a bankruptcy petition fixes a secured creditor's rights— and further action to preserve a secured lien is unnecessary and may even constitute a violation of the automatic stay.[8]

A few years ago, the Second Circuit Court of Appeals dealt with the subject of tolling in *In re Morton*, 866 F.2d 561 (2d Cir.1989), which is a significant case, not only for its legally substantive discussion concerning the issue of tolling in relation to 11 U.S.C. §§ 362(a) and 108(c), but significant in that it was the first circuit court ruling on the subject and, as such, has been relied on by other courts, including the Eighth Circuit Court of Appeals. The principal question in *Morton* was whether a judgment lien, valid under state law for ten years, would remain enforceable after the ten-year expiration period when, during that period, the property subject to the lien became part of a bankruptcy estate protected by 11 U.S.C. § 362(a). *Id.* at 561.

Factually, at the time the Morton bankruptcy petition was filed, the bank held a judgment lien on debtor's residential property. *Id.* at 562. When the lien was about to expire, the bank sought and obtained a state court order extending the judgment lien for as long as the bank was stayed by debtor's bankruptcy filing, "plus three months after the lifting of the stay." *Id.* After the extension was granted, Morton moved the bankruptcy court to determine that the ten-year period had lapsed and that the bank failed to properly extend its lien. The bank opposed the motion with these four arguments:

1. The automatic stay, in effect since filing, removed the bank's obligation to extend the lien;

2. The judgment lien remained enforceable simply because it was valid at the time the petition was filed;

3. The lien was automatically preserved until the automatic stay was lifted by virtue of 11 U.S.C. § 108(c); and

4. The state court ordered that the lien be extended.

*Id.* The Second Circuit Court of Appeals affirmed the lower courts,[9] focusing on the bank's first and third arguments.

First, the court determined that 11 U.S.C. § 362(a) did not eliminate the state requirement for extending statutory liens—there was no actual conflict between the Bankruptcy Code and the state's policies and laws inasmuch as no federal interest was raised (solely because of the ongoing bankruptcy

---

7. *See supra* note 4 and accompanying text.

8. Several reasons were used to conclude that a properly filed financing statement would not lapse during an intervening bankruptcy:

● The critical time for determining the rights of a debtor and creditor is on the date of filing and if valid at filing, the lien is preserved;
● The purpose of filing a U.C.C. statement or continuation statement is to provide adequate notice of a creditor's interest in property to other parties and the only parties who could possibly be "injured" by not filing a continuation statement are creditors who obtain liens after the financing statement expires, however, because the trustee takes possession of the debtor's property at filing, this possession is open and notorious, therefore, these creditors

do not need the protection of a continuation statement; and
● The 1972 revision to the U.C.C. was not a change in law, it was merely an attempt to clarify a rule.
*In re Bond Enterprises, Inc.*, 54 B.R. at 369–70.

9. The bankruptcy court denied the motion, focusing on the bank's first argument, holding that the automatic stay preserved the bank's lien and removed any duty the bank may have had to renew the lien until after discharge. *In re Morton*, 866 F.2d at 563. The district court affirmed, focusing on the second argument, holding that the "critical" time for determining the respective rights of a debtor and its creditors is at filing, and because the bank's lien was valid at the time of filing, the lien was preserved without regard to whether it would expire at some later date under state law. *Id.*

proceeding) that would require a lienholder to be relieved of the state extension requirements, "especially when the very existence of that lien is created and defined by state law and when the extension will have no adverse effect on any party or property involved in the bankruptcy proceeding." *Id.* at 563–64. Next, the court disagreed with the implication that attempts to extend the lien may have violated the automatic stay; instead, the court found the bank was free to make an application to extend its judgment lien, without regard to the automatic stay. *Id.* at 565. Emphasizing a very limited view of the language in Section 362(a)(4), which stays acts "to create, perfect, or enforce any lien against property of the estate," the court reasoned:

> [S]ignificantly, the section does not explicitly prohibit acts to extend, continue, or renew otherwise valid statutory liens, nor is there any indication from the legislative history that Congress intended such a result.... [Obtaining an extension] simply allows the holder of a valid lien to maintain the status quo—a policy not adverse to bankruptcy law, but rather in complete harmony with it.

*Id.* at 564.

Having determined bankruptcy courts have no power under Section 362(a) to enjoin extension proceedings required by state law, the issue was examined under 11 U.S.C. § 108(c), which instructs:

> ... if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor, or against an individual with respect to which such individual is protected under section 1201 or 1301 of this title, and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of—

> (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
>
> (2) 30 days after notice of the termination or expiration of the stay under section 362, 922, 1201, or 1301 of this title, as the case may be, with respect to such claim.

Acknowledging a split among bankruptcy courts,[10] the *Morton* court determined Section 108(c) tolled the state's ten-year period governing judgment liens on real property, because Section 108(c) was intended to protect liens and other enforcement proceedings against the running of limitation periods during the time when the automatic stay is in effect, including not only the commencement of actions, but continuation proceedings as well. *Id.* at 566. Since the ten-year period had not expired when the petition was filed, the limitation period would not expire until the later of the end of the ten-year period or thirty days after notice of the termination or expiration of the stay. *Id.* Harmony with congressional purpose was declared:

> [R]ecognizing that a petition in bankruptcy could sometimes give a debtor unfair advantage over a claimant by allowing the debtor to remain under the protection of the automatic stay until the limitation period governing the claimant's action had expired [citations omitted] congress acted to solidly preserve the rights of a party 'stayed from commencing or continuing an action against the debtor because of the bankruptcy case.'

*Id.*, citing S.Rep. No. 989, 95th Cong., 2d Sess. 30 (1978), H.R.Rep. No. 595, 95th Cong., 2d Sess. 318 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5816, 6275.

The Eighth Circuit Court of Appeals has endorsed and relied on *In re Morton* on two recent occasions. In *Hazen First State Bank v. Speight*, 888 F.2d 574 (8th Cir.1989), two creditors with perfected security interests in debtor's machinery fought over priori-

---

**10.** *Morton* cites several bankruptcy courts which found Section 108(c) tolled the expiration of periods governing the life of statutory liens, including *In re Victoria Grain Co.*, 45 B.R. 2 (D.Minn. 1984); *In re Houts*, 23 B.R. 705 (W.D.Mo.1982); and *In re Design Builders, Inc.*, 18 B.R. 392 (D.Idaho 1982), while other courts found Section 108(c) did not apply, including *In re Hunters Run Limited Partnership*, 70 B.R. 297 (W.D.Wash. 1987); and *In re RDR Systems Development, Inc.*, 57 B.R. 540 (M.D.La.1986). *In re Morton*, 866 F.2d at 566.

ty to sale proceeds realized from the collateral. The Small Business Administration [hereinafter "SBA"] perfected its interest in April 1981 and filed a continuation statement in March 1986. Before the bank perfected its interest in February 1986, the two creditors agreed that the SBA lien would be subordinate to the bank's lien. *Id.* at 575. The parties agreed that the agreement would expire March 1, 1987, but just prior to that time, on February 24, 1987, debtor filed a petition for bankruptcy relief and invoked the automatic stay. *Id.* "But for" debtor's filing, the bank argued it could have sued the debtor and SBA any time before the subordination agreement expired, thereby freezing the priority status of the parties.

The court first determined that the automatic stay had no effect; that is, it did not alter the actual expiration of the subordination agreement—expiration occurred pursuant to its own terms—no act was required for the expiration to occur. *Id.* at 576. Adding, "[the automatic stay] does not enlarge the rights of individuals under a contract nor does it toll the running of time under a contract," the court found the agreement was outside the scope of 11 U.S.C. § 362(a). *Id.* Turning to the tolling provision of 11 U.S.C. § 108(c), the court adopted the *Morton* approach as to its purpose and application but, due to a factual distinction, could not "toll" the expiration date: the bank and SBA merely faced a loss in priority status as opposed to losing the complete right to enforce a particular lien as contemplated by Section 108(c). *Id.* at 577.

In a more recent decision, *In re Larson,* 979 F.2d 625 (8th Cir.1992), the issue was whether the automatic stay had been violated when the bank filed an addendum to its collateral real estate mortgage during the pendency of debtor's bankruptcy case without obtaining relief from the stay. Again, relying on *In re Morton,* the court, without hesitation, found no stay violation, based on the belief that North Dakota's statutory extension requirements merely maintained the status quo rather than creating any new rights. *Id.* at 627.

These cases suggest some interesting perceptions about the automatic stay: whether it eliminates a state law duty to continue or extend existing liens, or permits some acts of perfection while prohibiting others, or tolls or extends the time in which to perform the acts it prohibits, as suggested in this case by FCS. The proper mind-set is to recall that the automatic stay is the cornerstone of bankruptcy. Congress intended it would be:

> ... one of the fundamental debtor protection[s] provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 340 (1977), S.Rep. No. 989, 95th Cong., 2d Sess. 54–55 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5840–41, 6296–97. Courts have ruled that "the automatic stay is fundamental to the reorganization process, and its scope is intended to be broad." *Small Business Administration v. Rinehart,* 887 F.2d 165, 166 (8th Cir.1989). This Court has always maintained that it is within the bankruptcy court's sphere of responsibility to be the jealous guardian of this fundamental protection by vigorously upholding the automatic stay, lest the Bankruptcy Code become meaningless legislation. *In re Claussen,* 118 B.R. 1009, 1014 (Bankr.D.S.D.1990).

Upon that foundation, the Court finds that filing a collateral real estate mortgage addendum is more than merely an act to maintain the status quo: it is an act of perfection. *In re Bond Enterprises, Inc.,* 54 B.R. at 369. Regardless of whether the filing is an attempt to establish a new lien, or revive an extinguished lien, or continue an existing lien, the goal is the same: perfection. Setting aside all bankruptcy considerations, consider what would happen if a creditor failed to file an addendum: perfection would lapse. But what if the creditor files an addendum on time: perfection exists. Attempts to characterize these kinds of filings as acts that "extend, continue, or renew" as separate and distinct from acts that "create, perfect, or enforce" amount to hair-splitting efforts that chip away at the solid foundation laid with

Section 362(a). In this case, perfection hinged on filing an addendum, and the plain language of Section 362(a)(5) stays *any* act of lien perfection. That is part of the basic protection and relief intended by this provision. Nothing within the plain meaning language of Section 362(a)(5), however, provides that state law duties to extend valid liens are to be eliminated or extended.

■ Nevertheless, following *Morton* and its progeny, the Court agrees 11 U.S.C. § 108(c) is designed to extend "the period for commencing or continuing a civil action against the debtor to, at a minimum, 30 days after termination or expiration of the automatic stay." *In re Morton*, 866 F.2d at 567. But the facts must warrant tolling. Section 108(c) was enacted to prevent a debtor from gaining an unfair advantage over a creditor by filing a bankruptcy petition shortly before the end of a statutory time limitation, thereby allowing the limitations period to run while the debtor is still protected by the automatic stay. *See In re Hunters Run, Ltd.*, 875 F.2d 1425 (9th Cir.1989); *In re Miller*, 133 B.R. 405, 410 (Bankr.S.D.Ohio 1991); *Matter of Burger*, 125 B.R. 894, 901 (Bankr.D.Del.1991). If Debtors had filed their Chapter 11 petition shortly before the collateral real estate mortgage expired on April 18, 1989, Section 108(c) would have tolled the time in which to file an addendum until the later of that period, "including any suspension of such period occurring on or after the commencement of the case" or thirty days after the stay expired on February 12, 1986. The facts in this case, however, do not warrant tolling, because Debtors did not seek bankruptcy protection right before the collateral real estate mortgage was to expire. *See In re Thurman*, 878 P.2d 7, 9 (Colo.App. 1993). Rather, Debtors filed the Chapter 11 bankruptcy petition several years before the collateral real estate mortgage was calculated to expire. Additionally, FCS had more than three years after discharge was granted and the automatic stay terminated in which to file an addendum; therefore, the Chapter 11 proceeding did not work to the unfair advantage of FCS nor did it prevent FCS from proceeding with the addendum filing. In sum, the

facts do not require the tolling remedy offered by 11 U.S.C. § 108(c).

### C.  The Stipulation and Agreement

■ Debtors and FCS stipulated to the manner in which FCS's claim would be treated under Debtors' Chapter 11 plan. FCS argues that agreement serves as the parties' waiver to relitigate any of the issues involved, including validity issues raised in regard to financing statement # 19248 and the collateral real estate mortgage. Based on this agreement, FCS believes it should still retain its liens on Debtors' property pursuant to the court order that approved the stipulation reciting "all prepetition liens be retained throughout the period of the agreement." In short, the order approving the stipulation is still binding between the parties. The Court adopts this philosophy in principle only. The Court also recalls that this same stipulated agreement required FCS to make a good faith effort to renegotiate Debtors' balloon payment which became due and owing after seven years, however, FCS thwarted Debtors' efforts to strike a new deal, which, eventually, necessitated the filing of the current Chapter 12 filing.[11] It seems inappropriate to adopt the result suggested by FCS's argument which is based on an agreement FCS chose not to honor.

### III.

In this adversary, FCS seeks a determination of its secured position as it relates to Debtors' chattels and real estate. FCS claims it is secured by virtue of notes, mortgages, security agreements, and a collateral real estate mortgage which is still perfected, based on the belief that the automatic stay invoked by Debtors' Chapter 11 bankruptcy tolled the period in which to file an addendum required to continue the perfected status of the collateral real estate mortgage. Perfection, however, was not due to lapse until some three years after the automatic stay expired.

Contrary to some decisions, this Court believes filing an addendum is an act to perfect a lien, stayed by 11 U.S.C. § 362(a)(5), inas-

---

11.  *See supra* note 2 and accompanying text.

much as it operates to continue the effectiveness of a collateral real estate mortgage. The automatic stay does not, however, specifically "do away" with a creditor's duty to comply with a state's extension requirements, nor does it add to or toll the state's statute of limitations which establishes the effective period for a collateral real estate mortgage. In tandem with the automatic stay, however, is 11 U.S.C. § 108(c), which may toll the period in which to comply with state law extension requirements. Under Section 108(c), the time period in which to act is tolled until the later of thirty days after the automatic stay is terminated or until the end of the applicable statute of limitations. This tolling prevents a debtor from gaining an unfair advantage over a creditor by filing a bankruptcy petition just prior to the end of a statutory time limitation, thereby allowing the limitations period to run while the debtor is still protected by the automatic stay.

The facts of this case do not give rise to the tolling remedy offered by 11 U.S.C. § 108(c). Debtors filed a Chapter 11 bankruptcy petition in January 1985 and obtained a discharge in February 1986. FCS's collateral real estate mortgage, filed in 1984, was not due to expire until April 1989. The Chapter 11 proceeding did not jeopardize FCS's opportunities to continue the perfected status of its collateral real estate mortgage. FCS could have filed an addendum any time during the remaining three years which followed the bankruptcy discharge. If an addendum is not timely filed, the lien created by the collateral real estate mortgage shall lapse. S.D.C.L. § 44-8-26. The facts do indicate, however, that FCS made a proper continuation filing to financing statement # 19248, and, to that extent, along with any other financing statements properly filed during the pendency of Debtors' Chapter 11 proceeding, FCS could still retain a security interest.

The Court shall enter an appropriate order.

### ORDER DETERMINING SECURED STATUS OF FARM CREDIT SERVICES

In recognition of and in compliance with the Memorandum Decision entered this day regarding a Complaint to Determine the Validity, Priority and Extent of Lien filed by Farm Credit Services [hereinafter "FCS"] which raised the issue of whether the automatic stay tolled the time permitted under South Dakota law for filing an addendum to a collateral real estate mortgage in order to continue FCS's existing lien, it is hereby

ORDERED that FCS is not secured in Debtors' chattels and real estate by virtue of a collateral real estate mortgage filed February 16, 1984, since the security interest perfected by that filing had already lapsed under S.D.C.L. § 44-8-26 when FCS filed its addendum on January 17, 1990, and inasmuch as the period permitted for filing the addendum is not subject to tolling under 11 U.S.C. § 362(a) nor, based on the facts of this case, is tolling appropriate under 11 U.S.C. § 108(c); it is further

ORDERED that FCS is secured in Debtors' equipment, livestock, feed, grain, and general farm products pursuant to financing statement # 19248 which was filed December 3, 1979, and, as required by S.D.C.L. § 57A-9-403(2), properly continued twice by FCS; additionally, FCS is secured pursuant to those financing statements which were filed and/or continued pursuant to this Court's order during the pendency of Debtors' Chapter 11 bankruptcy proceeding.